

565

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bascom Giles
Commissioner, General Land Office
Austin, Texas

Dear Sir:

Opinion No. 0-1750
Re: Does the failure to drill an
offset well on land leased under
Section 8 of Chapter 271, Acts
of 1931, in the time provided
therein automatically terminate
the lease; if not, does the Com-
missioner of the General Land
Office have any discretion in
forfeiting a lease thereunder?

You submitted to us leases Nos. 24076 and 24077,
executed by the Commissioner of the General Land Office
on November 21, 1938, under the provisions of Section 8,
Chapter 271 of the Acts of May 29, 1931, and the Acts of
the 36th Legislature, Chapter 19, page 51, Second Called
Session, and requested an opinion from this department
as to whether or not the failure to drill an offset well
as provided in the statute and in the leases would ipso
facto terminate the leases or was it necessary for the
Commissioner of the General Land Office to take some
action before the forfeiture became effective, and if it
was necessary for the Land Commissioner to take some action
before the forfeiture became effective, then whether or
not the Land Commissioner had any discretion to withhold
the forfeiture upon assurance of compliance in the future
with the offset provisions.

In order to answer your question, it is nec-
essary to trace the pertinent legislation on the matter

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

and determine the intention of the Legislature. Chapter 19 of the Acts of the 36th Legislature, Second Called Session of 1919, page 51, Section 9 has the same provisions as Article 5359 of the Revised Civil Statutes of 1925, namely, that the lessee under the act shall in good faith begin an offset well within 60 days after the completion of a commercial well on adjoining property within 1,000 feet of the land leased.

Section 12 of said act provides as follows:

"If the owner of a lease should fail or refuse to make the payment of any sum due either on an area or royalty on the production within thirty days after same shall become due, or if such owner or his authoritized agent should knowingly make any false return or false report concerning production, royalty, or drilling, or if such owner should fail or refuse to drill any offset well or wells in good faith as required by this Act and the rules and regulations adopted by the Commissioner of the General Land Office, or if such owner or his agent should refuse the proper authority access to the records pertaining to the operations under this Act, or if such owner or his authorized agent should knowingly fail or refuse to give correct information to the proper authority, or fail or refuse to furnish the log of any well as provided herein, such lease shall be subject to forfeiture by the Commissioner of the General Land Office and when sufficiently informed of the facts which authorize a forfeiture, the Commissioner of the General Land Office shall forfeit same, and the area shall be subject to lease again to another than to such forfeiting owner after due advertisement; provided, such forfeiture may be set aside and the lease and all rights thereunder reinstated before the rights of another intervene upon satisfactory evidence of future compliance with the provisions of this Act and the rules and regulations authorized to be adopted for the purpose of executing its provisions."

Chapter 81 of the Laws of the 36th Legislature, Second Called Session, page 249 is what is commonly known as the Relinquishment Act. Section 4 thereof, which is

Honorable Bascom Giles, Page 3

Article 5370 of the Revised Civil Statutes, 1925, provides
as follows:

"If the persons aforesaid, who own or con-
trol land included in this Act, should fail or
refuse to begin such drilling of offset wells
thereon within the time required or fail or
refuse to drill such well or wells diligently
and in good faith or fail or refuse to drill
such well or wells to the depth necessary for
the purpose intended, or fail or refuse to use
the means necessary to the development of any
well or wells thereon within the time required
or fail or refuse to drill such well drilled
thereon, thereupon the relinquishment herein
granted shall ipso facto terminate and the
rights acquired thereunder shall likewise term-
inate, and the oil and gas relinquished herein
shall revert to and become the property of the
State's General Revenue Fund and when the Com-
missioner of the General Land Office is suf-
ficiently informed of the facts which so terminate
such rights, he shall indorse on the wrapper con-
taining the papers relating to the sale of the
land words indicating such termination and sign
it officially."

Section 9 thereof is the same as Article 5372
of the Revised Civil Statutes of 1925, and substantially
the same as Section 12 of Chapter 10 above. The follow-
ing phrase in Section 12 is not in Section 9 of Chapter
81 nor in Article 5372:

"Refuses to drill any offset well or
wells in good faith as required by this Act
and the rules and regulations adopted by the
Commissioner of the General Land Office."

It will be noted that in Section 9 of Chapter
10 being the section dealing with offset wells, no penalty
or forfeiture is provided for, but Section 12 deals with
forfeiture of every kind and character and includes for-
feiture for failure to drill offset wells, but Chapter
81, Section 4, dealing with offset wells provides for an

Honorable Bascom Giles, Page 4

ipso facto termination of leases executed under that
Act and naturally Section 9 thereof, dealing with
forfeitures for failure to perform certain duties on
the part of the lessee did not have any provision with
respect to offset wells as that has been taken care of
in Section 4.

In the revision of 1925, the above provisions
in the Relinquishment Act were not changed and are set
out in the revision as Articles 5370 to 5372.

The provision of Chapter 19 wherein it deals
with offset wells was not changed in the revision as
shown by Article 5359, but section 12, dealing with for-
feitures was omitted and Article 5360 was inserted in
its stead, which provides as follows:

"The provisions of subdivision 3 of this
chapter governing the forfeiture of rights
thereunder and a reinstatement thereof, shall
apply to leases under this subdivision, and
an forfeiture of such lease, after due adver-
tisement, it shall be subject to lease by
another than such forfeiting owner."

The question immediately arises as to whether
or not Article 5360 refers to both Article 5370 and
Article 5372 or refers only to Article 5372. In making
the revision, the revisers evidently overlooked the fact
that Article 5372 was not identical with Section 12 of
Chapter 19, in that it did not have a provision with
respect to failure to drill offset wells. It seems
obvious that the reason Section 12 was not copied into
subdivision 2 of Chapter 4 of Title 86, R. C. S. but
the provisions of forfeiture in subdivision 3 of said
Chapter were incorporated by reference was to eliminate
duplications. It will be noted that Article 5360 refers
to the provisions of subdivision 3 governing "forfeiture
of rights thereunder and reinstatement thereof", and
that Article 5372 in subdivision 3 is headed "For-
feiture of Rights"and deals with forfeiture and re-
instatement and that said Article is the only one in
subdivision 3 which deals with forfeiture and reinstate-
ment in same. Article 5370 provides for ipso facto

Honorable Bascom Giles, Page 5

termination of a lease under the Relinquishment Act on failure of the lessee to drill an offset well which is not strictly a forfeiture. To read Article 5370 into subdivision 2 by reason of the provisions of Article 5360 would be to make a radical change in the law as it existed before the revision with respect to the result of failure to drill an offset well on leases covered by subdivision 2, but to read Article 5372 into subdivision 2 would leave the law unchanged by the revision. Of course Article 5372 does not provide for a forfeiture for failure to drill an offset well but considering Articles 5359, 5360 and 5372 together, it seems clear that Article 5372 was pointed to by Article 5360 as the procedure to be followed in forfeiting leases for the violation of obligations imposed in subdivision 2 and not for the grounds of forfeiture therein listed, and therefore the procedure provided in Article 5372 should be followed with regard to the forfeiture of the leases about which you have made inquiry.

In addition to the reasons set out above, we find in the final title of the revision of 1925, after the provisions that all civil laws not included therein or which are not expressly continued in force are repealed, section 9, headed "Public and Other Land", which provides as follows:

"Public and Other Lands - That all laws affecting the issuance of patents under valid land certificates; or fixing a time limit in which to redeem lands sold for taxes; or authorizing suits to contest forfeiture of sale for non-payment of interest on public lands, or affecting the reinstatement of rights after such forfeiture; or conferring a prior right to purchase land surveyed by virtue of a private right, for which a patent cannot issue; or extending oil and gas permits on public lands; or extending the time for payment of principal due on public lands sold in accordance with law; or affecting the title to public and other lands; or authorizing the land Commissioner, the Governor, or any authorized board, to sell or lease certain lands or water rights; or granting land to cities; or affecting land reservations, or setting apart portions of such reservations for the benefit of actual settlers, are continued in force. (Underscoring ours)

Honorable Lascom Giles, Page 6

We think that this section had the effect of continuing in force Chapter 19 of the Acts of the 36th Legislature, Second Called Session, being the law as it existed before the revision. It also strengthens our conclusion that Section 12 of Chapter 19 was omitted in the revision and Article 5360 inserted in its place, not for the purpose of changing the penalty for failure to drill an offset well to that prescribed in Article 5370 of the Relinquishment Act but for the purpose of eliminating repetition in the statutes by reference to Article 5372.

It is, therefore, the opinion of this department that in order to effect a forfeiture of the leases under consideration for failure to drill an offset well, as required by law, the Commissioner of the General Land Office must take some action, amounting to a re-entry or its equivalent, such as endorsing on the leases the fact that they have been forfeited for failure to drill an offset well. We are, also, of the opinion that the Commissioner of the General Land Office has some discretion in this regard, even though Section 12 of Chapter 19, and Article 5372 provide that the Commissioner of the General Land Office "shall forfeit same when sufficiently informed of the facts which authorize a forfeiture". Such a provision ordinarily is mandatory but when followed, as it is, by a provision that the Commissioner may set aside the forfeiture and reinstate the lease before the right of another intervenes on satisfactory evidence of future compliance with the Act, we think the statute considered as a whole authorizes the Commissioner upon satisfactory evidence of future compliance before he forfeits a lease to withhold the forfeiture and does not require him to forfeit the lease and then immediately reinstate it on such satisfactory evidence of future compliance.

We trust that this opinion sufficiently answers your questions.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED FEB 27, 1940

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

By

D. D. Mahon
Assistant

DDM:BT

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN